IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICH AUREL, 317239                          *
            Plaintiff,
      v.                                    *     CIVIL ACTION NO. ELH-14-352

CAPTAIN ERIC JEFFERSON                      *
CHIEF SCRETARY ALLEN K. GANG
MAJOR FORD                                  *
CAPTAIN HARRIS
LT. MERCHANT                                *
LT. BRANDON BARNETT
CAPTAIN STEVEN ROWLLAND                     *
LT. HARRIS
SERG. ROBER[T] JORDAN                       *
SERG. ROMO
SERG. MUIDE                                 *
LT. RALY
SERG YALITE                                 *
WARDEN JOHN WOLFE
DAMON WILLIAMS                              *
CASE MAN, LEWIS
CASE MAN, AL                                *
CASE MAN. CAROL JACKSON
CASE MAN MARIA FISHER                       *
MR. KARIYA
            Defendants.                     *
                                          *****

## MEMORANDUM

Self-represented plaintiff Mich Aurel, a Maryland prisoner incarcerated at North Branch

Correctional Institution ("NBCI"), alleges in his court-ordered supplemental complaint,[1] ECF 3,

that beginning in 2012, he began to be harassed by Jessup Correctional Institution ("JCI")

officers, and was further subject to "abuse mental harassment, manipulation, corporal

punishment, physical welfare and physical and psychological assault (and) discrimination." *Id.*

---

[1] Aurel's original complaint contained generalized allegations and leveled no particular claims against the named defendants. ECF 1. He was given the opportunity to supplement his complaint. ECF 2. His supplemental complaint fares no better.

at 3.  He claims that the threats came "from officers to gangs of Blood and Crips."  Aurel further alleges that he was denied overseas telephone access to contact friends and family in Romania and officials at the Romanian Embassy in the District of Columbia.  Finally, he asserts that he has a fear of and is allergic to dogs, but was moved onto a JCI tier that housed a canine.  *Id*.  Aurel seeks $30,000,000.00 in damages.

Pending is a motion to dismiss or, alternatively, for summary judgment ("Motion"), filed by defendants Warden John Wolfe; Chief of Security Allen K. Gang; Major Ford; Captain Steven Rowlland; Lieutenant Marchant; Lieutenant Brandon Barnett; Case Manager Al; Captain Harris;, Lieutenant Harris; Lieutenant Raly; Lieutenant Yalite; Sergeant Romo; Case Manager Carol Jackson; and Case Manager Maria Fisher.  ECF 17.[2]  The Motion is supported by a memorandum of law (ECF 17-1) and several exhibits.  *See* ECF 17-2 to 17-11.  Plaintiff filed a response, entered on the docket as an opposition.  ECF 19.[3]

Although docketed as an opposition, Aurel's submission reads more like a motion for appointment of pro bono counsel.  Although 28 U.S.C. § 1915(e)(1) permits a court to request an

---

[2] Service of Process was not accepted for defendants Captain Eric Jefferson, Sergeant Rober[t] Jordan, Sergeant Muide, Damon Williams, Case Manager Lewis, and Mr. Kariya.  The court observes that subsequent to the filing of Aurel's supplemental complaint, the court ordered the Clerk to amend the docket to modify the name of defendant Williams and to add the name of Mr. Kariya as a defendant.  ECF 5, n. 2.  Kariya's name was not added to the docket.  Further, the attempt to effect "streamlined service of process" through the JCI Litigation Coordinator did not include Kariya's name, nor the names of defendants Williams, Muide, and Jordan.  *Id*. at attached letter.  The Order which accompanies this Memorandum shall direct the Clerk to take curative action.

[3] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on September 29, 2014, Aurel was notified that defendants had filed a dispositive motion, the granting of which could result in the dismissal of his case. ECF No. 18.  He was informed that he was entitled to file materials in opposition to that motion within 17 days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court.  *Id.*  He filed a response.  ECF No. 19.

attorney to represent an indigent litigant, it "does not authorize the federal courts to make coercive appointments of counsel." *Mallard v. U.S. District Court for the S. Dist. of Iowa,* 490 U.S. 296, 309–10 (1989).  Moreover, a district court need not request an attorney's assistance pursuant to § 1915(e)(1) unless the case presents complex issues or exceptional circumstances. *See Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard*, 490 U.S. at 298.

This case, which raises a number of general claims of harassment, abuse, manipulation, and discrimination and specific claims of problems with mail and telephone access and conditions of confinement, presents no exceptional circumstances that would warrant a request for representation pursuant to § 1915(e)(1).  Aurel has failed to show a particular need or exceptional circumstances that would require the assistance of a trained practitioner.  Therefore, counsel shall not be appointed in this matter.

In any event, no hearing is necessary to resolve the Motion.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons that follow, defendants' Motion, construed as one for summary judgment, shall be granted.

## Factual Background

Aurel has been an inmate in the Maryland Division of Corrections since December 4, 2003.  ECF No. 17-3.[4]  He was housed at JCI from June 1, 2006, to November 1, 2013, when he was transferred to NBCI, where he is currently confined.  *Id*.

Defendants maintain that phone services for long distance and international calling are provided by Global Tel*Link ("GTL") and that the inmate and family must make arrangements and pay the associated costs for an inmate to telephone Romania or the District of Columbia.

---

[4] I have cited to the electronic pages as they appear on the court's CM/ECF system. These pages do not necessarily correlate to page numbers on the hard copies of the documents.

ECF No. 17-9, Carter Decl.  They assert, however, that it is up to the inmate to make sure that he meets all requirements to make the calls he wishes to make and, even if an inmate acquired GTL services, there are circumstances where he is not permitted to use the telephone, *i.e.*, assignment to administrative or disciplinary segregation.

Defendants maintain that on July 14, 2013, Aurel's cell became inoperable, when the cell's door was broken. ECF No. 17-5.  Aurel and his cellmate were moved to another cell on JCI's D Block, C Tier.   However, Aurel refused to enter the cell and was charged with violating Rules 400 and 401 (disobeying a direct order and refusing to work, carry out an assignment, or accept a housing assignment). He was written up on an incident report and immediately taken to administrative segregation on JCI Building B, C Tier, pending a hearing.  *Id*.  As a result of this rule violation, Aurel was sentenced to a 30-day cell restriction.  ECF No. 17-9, Carter Decl.

On July 20, 2013, Aurel filed an administrative remedy procedure ("ARP") grievance regarding the switching of his cell and his relocation to an area where the VET dog training program was located.   He claimed he was allergic to dogs and being around them directly threatened his health.  The ARP was dismissed for procedural reasons.  ECF No. 17-40.  Upon completion of his segregation sanction, on August 15, 2015, Aurel was transferred to JCI, Building F, D Tier.

Aurel filed another ARP on September 4, 2013, asserting that defendants were preventing him from sending mail.  He was advised to resubmit the ARP with additional information to support his claims.  Defendants state that although Aurel resubmitted his ARP, he provided no additional evidence and his complaint was dismissed.  ECF No. 17-6; ECF No. 17-9.

On January 24 and August 16, 2013, JCI officers received notes that members of the Blood and Crips gangs were planning to stab Aurel.  ECF No. 17-7; ECF No. 17-8.  Defendants

state that once officers were made aware of the threats, "steps were taken" to ensure Aurel's safety.   For his part, Aurel wrote and signed statements indicating that he had been in jail for a long time, had no enemies, and did not fear for his safety.   *Id.*

Defendants allege that although Aurel filed a number of ARPs, he did not file grievances with the Inmate Grievance Office ("IGO") as to the issues raised in his § 1983 complaint.   ECF No. 17-11, Oakley Decl.   Therefore, they argue that his claims are barred for failure to exhaust administrative remedies.

**Standard of Review**

Defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.   ECF No. 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.   *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).   Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).   However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).   If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).   When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that  conversion under Rule 12(d) may occur; the court "does not have an

obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[5]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot

---

[5] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit …is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary"

7

and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d), although he did respond to the Motion.   In light of all of the foregoing, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate the disposition of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.  There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most

favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.  Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, __ F.3d ___, No. 13-2212, slip op. at 12 (4th Cir. March 12, 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black &. Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.  Indeed, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.  *See*, *e.g.*, *Boone v. Stallings*, 583 Fed. App'x. 174 (4th Cir. 2014) (per curiam).

However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact.  *See Anderson*, 477 U.S. at 247-48.  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment.  *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law."  *Id.* at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation*, 477 U.S. at 323–24).

## Discussion

The court must first examine defendants' assertion that Aurel's claims must be dismissed due to his failure to exhaust available administrative remedies.  The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

(a) Applicability of administrative remedies

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to

exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an administrative remedy procedure available to Maryland State prisoners, within the meaning of 42 U.S.C. § 1997e(a), for the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction ["DOC"]." Md. Code (2008 Repl. Vol., 2011 Supp.), § 10-206(a) of the Correctional Services Article ("C.S."); *see generally* C.S. §§ 10-201 *et seq*. Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." Code of Maryland Regulations ("COMAR") 12.07.01.01B(8).[6]

---

[6] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," C.S. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

In the Maryland correctional system, if the particular institution in which an inmate is incarcerated provides an administrative remedy procedure, the inmate must complete the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; Division of Correction Directive 185-002 (effective August 27, 2008). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

Filing a request for administrative remedy (or ARP) with the Warden of the Maryland prison in which one is incarcerated is the first of three steps in the administrative grievance process provided by the Division of Correction to its prisoners. The prisoner must file an ARP with the Warden within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first knew of the incident or injury giving rise to the complaint, whichever date is later. COMAR 12.07.01.05A. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. COMAR 12.07.01.05C. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Inmate Grievance Office. *See* COMAR 12.07.01.03; 12.07.01.05B; *see also* C.S. § 10-206; § 10-210. Complaints are reviewed preliminarily by the IGO. *See* C.S. § 10-207; COMAR 12.07.01.06. If the complaint is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B(4). The order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.

*See* C.J. § 10-208(c); COMAR 12.07.01.07-.08.   The conduct of such hearings is governed by statute.  C.S. § 10-208.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.   However, a decision concluding that the inmate's complaint is wholly or partly meritorious constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge.  *See* C.S. § 10-209(b)-(c).

In either event, the final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies.  *See* C.S. § 10-210.  But, an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement.  *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court."), *cert. denied*, 537 U.S. 949 (2002).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003), *aff'd,* 98 Fed. App'x. 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*

*v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Administrative remedies must, however, be available to the prisoner, and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).   The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008):

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Administrative remedies were available to plaintiff.   Therefore, as a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions.   *See Porter v. Nussle*, *supra,* 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct).   If defendants show that a claim is subject to the ARP process but has not been exhausted, the court may not consider the merits of the claim.   *See Jones v. Bock*, 549 U.S. at 220; *see also Woodford v. Ngo*, *supra,* 548 U.S. at 90-91.   Rather, the claim must be dismissed if plaintiff cannot show that he has satisfied the administrative exhaustion requirement under the PLRA, or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase*, 286 F. Supp. 2d at 528.

The uncontroverted record shows that although Aurel submitted ARPs to the IGO regarding dietary concerns and assignment to JCI segregation, he did not exhaust the claims raised here, because he did not submit them to the IGO.  ECF No. 17-3, Oakley Decl.  As such, the allegations raised in this complaint may not proceed, as Aurel has plainly failed to exhaust administrative remedies as to those issues.[7] A separate Order follows.


Date:  May 13, 2015                                    _____/s/_____
                                                       Ellen L. Hollander
                                                       United States District Judge

---

[7] In light of this decision the claims against defendants Jefferson, Jordan, Muide, Williams, Lewis and Kariya shall be dismissed.

15